Argued and submitted February 28, on petition, reversed and remanded for reconsideration in part, otherwise affirmed; affirmed on cross-petition April 20, respondent - cross-petitioner's motion for reconsideration filed May 5 allowed by opinion July 6, 1994

See 129 Or App 98 (1994)

BICYCLE TRANSPORTATION ALLIANCE,
an Oregon nonprofit corporation,
*Petitioner below,*

FRIENDS OF CEDAR MILL,
an Oregon nonprofit corporation,
Sensible Transportation Options for People,
an Oregon nonprofit corporation,
*Petitioners - Cross-Respondents,*

*and*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Intervenor below,*

*v.*

WASHINGTON COUNTY,
*Respondent - Cross-Petitioner.*

(LUBA 92-213; CA A82606 (Control))

BICYCLE TRANSPORTATION ALLIANCE,
an Oregon nonprofit corporation,
*Petitioner below,*

FRIENDS OF CEDAR MILL,
an Oregon nonprofit corporation,
Sensible Transportation Options for People,
an Oregon nonprofit corporation,
*Petitioners,*

*and*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Intervenor below,*

*v.*

WASHINGTON COUNTY,
*Respondent.*

(LUBA 92-214; CA A82607)
(Cases Consolidated)

873 P2d 452

Keith A. Bartholomew and Phillip E. Grillo argued the cause and filed the briefs for petitioners - cross-respondents.

Dan R. Olsen, Chief Assistant County Counsel, and David C. Noren, Assistant County Counsel, argued the cause for respondent - cross-petitioner. With them on the brief was John M. Junkin, Washington County Counsel.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Riggs, Judge.

DEITS, P. J.

## DEITS, P. J.

Petitioners seek review of and Washington County cross-petitions from LUBA's decisions remanding the county's enactment of one ordinance, but affirming two others, that amended the county's comprehensive plan provisions relating to transportation and roads. We affirm in part and reverse in part.

The principal issues that the parties dispute before us arise out of LUBA's conclusions that the provisions of the ordinances establishing "road alignment corridors" and authorizing three rural road projects conflict with certain LCDC rules and have not been shown to comply with statewide planning goals 3, 4, 11 or 14.

Before the challenged ordinances were enacted, the county's plan required that all but "insignificant" road alignment decisions had to be made through plan amendments, which must comply with and are reviewable for compliance with the statewide goals. The ordinances would eliminate that requirement for alignments or realignments within wide corridors at specified proximities to existing or proposed roadway centerlines. Petitioners contended to LUBA that that change eliminated the assurance that alignment decisions would comply with the goals, and was therefore impermissible. LUBA agreed, and rejected the county's argument that its Community Development Code (CDC) and other local provisions provided adequate alternative safeguards that obviated the need for direct application of the goals. LUBA made it clear that it was not foreclosing all possibility that the county could substitute CDC standards for the goals as alignment approval criteria. It held, however, that the county had not sufficiently explained in its present findings "why application of those CDC standards is adequate to substitute for direct application of the goals," or why the local standards "are sufficient to assure alignments selected under the Transportation Plan, as amended by ordinance 419, will comply with the goals."

LUBA next concluded that the alignment provisions are also in conflict with the locational specificity requirement of LCDC's Public Facilities Planning Rule. OAR 660-11-000 *et seq*. LUBA further concluded that, because the alignment

provisions "may [have] resulting effects" on the three specific road projects at issue, the county had to "address Goals 3, 4, 11 and 14" and OAR 660-12-065, a provision of LCDC's Transportation Planning Rule, in connection with the three roads. However, LUBA did not specifically remand for that purpose, but explained:

"[T]he county's resolution on remand of the alignment corridor issue * * * will also resolve the only issue petitioners raise [in connection with the three roads]. * * * Therefore, this subassignment of error provides no additional basis for remand."

Because one of the assignments in the petition is affected by our disposition of the cross-petition, we address the cross-petition first. The county argues in the first assignment of the cross-petition that the goals should not be applicable to road alignment decisions, unless they have "system impacts." According to the county, its own acknowledged legislation provides the planning framework, and particular "site specific" decisions can be made by reference to that legislation, rather than requiring plan amendments and application of the goals to particular alignment decisions. The county analogizes alignment decisions to decisions on shopping center applications. It posits that local comprehensive plans and land use regulations, which have already been acknowledged as complying with the goals, provide the applicable criteria for allowing or disallowing such centers, and there is no need or requirement that the goals should be applied to every shopping center proposal. The county concludes that the same "plan-zone (regulate)-build model" should apply here, and that specific alignments should fall at the "zone" or "build" rather than the "plan" location on the continuum.

Petitioners answer:

"The County analogizes to the construction of subdivisions and shopping centers to argue that goal compliance need not be demonstrated for decisions relating to the specific location of such structures on given parcels. In making its analogy, however, the County has left out the fact that when the parcels were originally zoned for subdivisions or shopping centers, an analysis was completed demonstrating compliance with the Statewide Planning Goals *for the entire parcel*, regardless of the footprints of the future buildings.

Here, the County is trying to gain the benefit of having to avoid compliance with the goals at the 'zone/regulate' phase without demonstrating compliance with the goals at the 'plan' phase.

"LUBA did not say that the County could not adopt one-mile and 1/3-mile corridors for its roads and highways. Rather, it gave the County a choice. If the County wants to adopt such corridors, and thereby eliminate the need to show compliance with the goals at the time of alignment and construction, it must demonstrate compliance with the goals at the time the corridors are incorporated into the comprehensive plan (*i.e.*, at the time the County adopted [the ordinance challenged here] * * *)." (Emphasis petitioners'.)

■   Petitioners are correct. The county's argument loses sight, among other things, of the fact that before the amendment by this ordinance, its acknowledged legislation required plan amendments and goal compliance for specific road alignment decisions. The ordinance eliminates the requirement that those decisions must comply with the goals directly, and the county has not provided an adequate showing that the planning mechanism that the ordinance establishes complies with the goals itself or lends any assurance that later specific alignment decisions will do so.[1] We reject this argument and the others the county makes in support of its first assignment.

In its second assignment, the county challenges LUBA's conclusion that the alignment corridor provisions violate the Public Facilities Planning Rule. We agree with LUBA's analysis of this issue. The cross-petition does not demonstrate error, and we turn to the petition.

■   Petitioners first contend that LUBA erred by not remanding the county's provisions pertaining to the three rural road projects. As we have explained above, LUBA held that those provisions required further consideration by the county, but declined to remand them independently of the alignment corridor provisions that present an overlapping issue for the county to resolve on remand. It is unclear to us

---

[1] Because the briefs reflect possible confusion on this point, we emphasize that the decisive issue in this assignment is not whether the goals or acknowledged local plan and regulatory provisions are to be applied to specific decisions. The question is whether an ordinance that *amends* a comprehensive plan complies with the goals. ORS 197.835(4); ORS 197.625.

why LUBA followed that approach, rather than simply remanding all of the matters that require further action by the county. However, petitioners' concern goes beyond the technical problem with LUBA's disposition. They contend that LUBA was incorrect in concluding that the *only* issue that petitioners raised concerning the road projects was the one that was related to their arguments concerning the alignment corridors. Petitioners point out that they made additional independent arguments regarding the road projects that LUBA did not address. Petitioners are again correct, and we remand to LUBA to reconsider the relevant claim of error.

■ One of the challenged ordinances amends the county's Goal 5 plan provisions in a number of respects, including the addition of the emphasized language to two of the county's community plans:

> "Design Element No. 2 for Southwest of Sherwood Subarea of the Sherwood Community Plan shall be amended as follows:

> "2. Cedar Creek, its tributaries and their immediately adjacent riparian zone, as defined in the Community Development Code, shall be retained in their natural condition, including topography and vegetation *consistent with the provisions of the Community Development Code.* This land shall be dedicated as public open space for pedestrian access and recreational purposes whenever feasible. * * *

> "Design Element No. 6 for Summit and Slopes Sub-area of the Bull Mountain Community Plan shall be amended as follows:

> "6. Streams, seasonal waterways and immediately adjacent riparian zones, as defined in the Community Development Code, shall be preserved in their natural condition including topography and vegetation, *consistent with the provisions of the Community Development Code.* Where roads are required, bridges shall be preferred means of crossing streams and waterways rather than infill and piping or channelization of waterflow."

Petitioners assign error to LUBA's rejection of their argument that those amendments violate Goal 5. According to petitioners, the effect of the amendments is to diminish the protection that the Goal 5 resources previously enjoyed by

subjecting them to all of the provisions of the CDC. Petitioners point in particular to CDC 422-3.3.A, which they read to allow the placement of streets and roads as a permitted use in resource areas of the kind in question. LUBA disagreed. It analyzed the relevant legislation and pointed out that, before the present amendments were adopted, the county's various Goal 5 plan documents and the CDC contained cross-references and overlapping applications, and were coexisting components of the county's Goal 5 regulatory scheme. Accordingly, LUBA agreed with the county that the amendments did little more than codify the county's interpretation of what the applicable legislation had said before the enactment of the amendments.

Although we agree with LUBA that petitioners have not demonstrated a basis for reversing the amendments, we reach that conclusion on narrower grounds. The amendments do not show an inconsistency with Goal 5 *on their face*. Whether future specific development proposals to which the amended provisions are applied will be compatible with Goal 5 is another question, which we cannot now reach. *See* ORS 197.829(4).

On petition, reversed and remanded for reconsideration of subassignment of error 2c; otherwise affirmed; affirmed on cross-petition.